1  MICHAEL TUBACH (S.B. #145955)
   mtubach@omm.com
2  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
3  San Francisco, California 94111-3823
   Telephone:  (415) 984-8700
4  Facsimile:  (415) 984-8701

5  IAN SIMMONS (*pro hac vice* forthcoming)
   isimmons@omm.com
6  KATRINA ROBSON (S.B. #229835)
   krobson@omm.com
7  BENJAMIN J. HENDRICKS (S.B. #288680)
   bhendricks@omm.com
8  O'MELVENY & MYERS LLP
   1625 Eye Street, NW
9  Washington, DC  20006
   Telephone:  (202) 383-5300
10 Facsimile:  (202) 383-5414

11

12 *Attorneys for Respondents*
   SAMSUNG ELECTRONICS CO., LTD.,
13 SAMSUNG ELECTRONICS AMERICA, INC.,
   and SAMSUNG TELECOMMUNICATIONS
14 AMERICA, LLC

15                **UNITED STATES DISTRICT COURT**

16          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17                     **SAN JOSE DIVISION**

18

19  In re Ex Parte Application of            Case No. 5:16-mc-800006-PSG
    QUALCOMM INCORPORATED,
20                                           **THE SAMSUNG ENTITIES'**
                     Applicant,              **MEMORANDUM OF LAW IN**
21                                           **OPPOSITION TO QUALCOMM'S**
    For an Order Pursuant to 28 U.S.C. § 1782  **EX PARTE APPLICATION FOR AN**
22  Granting Leave to Obtain Discovery from  **ORDER PURSUANT TO 28 U.S.C. § 1782**
    Samsung Electronics Co., Ltd.; Samsung   **GRANTING LEAVE TO OBTAIN**
23  Electronics America, Inc. and Samsung    **DISCOVERY FOR USE IN FOREIGN**
    Telecommunications America, LLC for      **PROCEEDINGS**
24  Use in a Foreign Proceeding.

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II.  BACKGROUND .............................................................................................. 3

III.  ARGUMENT .................................................................................................. 5

    A.  The Court lacks statutory authority to grant Qualcomm's application. ................. 5

        1.  The Samsung Entities do not reside and are not "found" in this district. ............................................................................................. 5

        2.  Section 1782 does not authorize the discovery of documents held outside the United States. ....................................................... 10

    B.  The Intel factors weigh strongly against granting Qualcomm's application. ....... 12

        1.  Samsung has participated in the KFTC's investigation by responding to formal and informal requests for information. .................. 13

        2.  Qualcomm's requested discovery would not assist the KFTC. ............... 14

        3.  Qualcomm's application seeks to circumvent the Korean legal process. ............................................................................................. 16

        4.  Qualcomm's discovery requests are unduly intrusive and burdensome. ........................................................................................ 18

IV.  CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Appl. of Digitechnic*,
    2007 WL 1367697 (W.D. Wash. May 8, 2007)..........................................................................17

*In re Appl. of Microsoft Corp.*,
    2006 WL 1344091 (D. Mass. Apr. 17, 2006) .........................................................................17

*In re Appl. of Motorola Mobility, LLC*,
    2012 U.S. Dist. LEXIS 149679 (N.D. Cal. Oct. 17, 2012).......................................................15

*In re Appl. of Nokia Corp.*,
    2007 U.S. Dist. LEXIS 42883 (W.D. Mich. June 13, 2007) .......................................................9

*In re Appl. of Okean B.V. & Logistic Sol. Int'l*,
    60 F. Supp. 3d 419 (S.D.N.Y. 2014)........................................................................................18

*Apple Inc. v. Samsung Electronics Co. Ltd.*,
    Dkt. No. 512 (entered May 13, 2013) .......................................................................................19

*Apple Inc. v. Samsung Electronics Co. Ltd.*,
    Dkt. No. 687 (entered Jan. 30. 2012) (No. 11-1846) ................................................................19

*AstraZeneca Pharms. LP v. Mylan Pharms. Inc. (In re Rosuvastatin Calcium Patent Litig.)*,
    2009 U.S. Dist. LEXIS 117355 (D. Del. Dec. 11, 2009).............................................................8

*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995)......................................................................................................6

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
    223 F.3d 1082 (9th Cir. 2000).....................................................................................................6

*United States ex rel. Banignan v. Organon USA Inc.*,
    2012 U.S. Dist. LEXIS 49661 (D. Mass. Apr. 9, 2012) .............................................................8

*Blackwell v. Marina Assocs.*,
    2006 U.S. Dist. LEXIS 9423 (E.D. Pa. Mar. 9, 2006) ...............................................................8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2012 U.S. Dist. LEXIS 184777 (N.D. Cal. Oct. 22, 2012).....................................15, 17, 18, 20

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 8255......................................................................................................16

*In the Matter of Certain Electronic Devices, Including Wireless Communication*
   *Devices, Portable Music and Data Processing Devices, and Tablet Computers*,
   Inv. No. 337-TA-794, Order No. 1 (entered Aug. 4, 2011) ..................................................19

*In re Certain Funds, Accounts*,
   *and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group LLC*, 2014
   U.S. Dist. LEXIS 95578 (S.D.N.Y. July 8, 2014) ....................................................9

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ............................................................................................7

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992) (Scalia, J. dissenting) ..........................................................15

*FTC v. Sysco Corp.*
   83 F. Supp. 271 (D.D.C. 2015) ..............................................................................18

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
   2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29, 2006).................................6, 11, 12

*In re Godfrey*,
   526 F. Supp. 2d 417 (S.D.N.Y. 2007)........................................................5, 9, 10, 12

*In re Grupo Unidos Por El Canal, S.A.*,
   2015 U.S. Dist. LEXIS 50910 (D. Colo. Apr. 17, 2015) ......................................10

*Grynberg v. Ivanhoe Energy, Inc.*,
   490 Fed. App'x. 86 (10th Cir. 2012).........................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ................................................................................................6

*Intel Corp. v. Advanced Micro Devices, Inc.*
   542 U.S. 241 (2004) ...................................................................................... *passim*

*In re Inversiones y Gasolinera Petroleos Valenzuela*,
   2011 U.S. Dist. LEXIS 5201 (S.D. Fla. Jan. 19, 2011 ...........................................5

*Jones v. Blige*,
   2006 U.S. Dist. LEXIS 29721 (E.D. Mich. May 16, 2006).....................................8

*King v. Am. Family Mut. Ins. Co.*,
   632 F.3d 570 (9th Cir. 2011)..................................................................................6, 9

*In re Kolomoisky*,
   2006 U.S. Dist. LEXIS 58591 (S.D.N.Y. Aug. 18, 2006) ......................................7

*In re Kreke Immobilien KG*,
   2013 U.S. Dist. LEXIS 160283 (S.D.N.Y. Nov. 8, 2013) ...........................10, 12, 13

- ii -

*In re Macquarie Bank*,
    2015 LEXIS 72544 (D. Nev. May 28, 2015) ...........................................................................13

*Merlino v. Harrahs Entm't, Inc.*,
    2006 WL 401847 (E.D. Penn. Feb. 17, 2006 ...........................................................................8

*In re Microsoft Corp.*,
    2006 U.S. Dist. LEXIS 24870 (N.D. Cal. Mar. 29, 2006) ................................................16, 17

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006) ...........................................................................13, 17

*Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*,
    2012 U.S. Dist. LEXIS 21938 (S.D. Tex. Feb. 22, 2012) ........................................................8

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*,
    384 F. Supp. 2d 45 (D.D.C. 2005) ...........................................................................10

*In re O2CNI Co.*,
    2013 U.S. Dist. LEXIS 116019 (N.D. Cal. Aug. 15, 2013) ....................................................15

*Overhill Farms, Inc. v. W. Liberty Foods LLC*,
    2014 U.S. Dist. LEXIS 116969 (C.D. Cal. Aug. 21, 2014) .....................................................9

*Presidio Home Care, LLC v. B-East, LLC*,
    2014 U.S. Dist. LEXIS 82686 (C.D. Cal. June 13, 2014) .......................................................9

*In re Roebers*,
    2012 U.S. Dist. LEXIS 92464 (N.D. Cal. July 3, 2012) .........................................................8

*In re Samsung Elecs. Co.*,
    2013 U.S. Dist. LEXIS 10518 (N.D. Cal. Jan. 23, 2013) ......................................................15

*In re Sarrio, S.A.*,
    119 F.3d 143 (2d Cir. 1997) ...........................................................................10

*Senne v. Kan. City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. May 20, 2015) ....................................................................9

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990) ...........................................................................6

*Soma Med. Int'l v. Standard Chartered Bank*,
    196 F.3d 1292 (10th Cir. 1999) ...........................................................................7

*In re Thai-Lao Lignite (Thai..) Co.*,
    821 F. Supp. 2d 289 (D.D.C. 2011) ...........................................................................5, 6, 10

*Travelers Cas. & Sur. Co. v. Interclaim (Berm.) Ltd.*,
    304 F. Supp. 2d 1018 (N.D. Ill. 2004) ...........................................................................8

- iii -

SAMSUNG'S OPP. TO EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
704 F.3d 668 (9th Cir. 2012) .......................................................................................6

*World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of N.Y., Inc.*,
2011 U.S. Dist. LEXIS 125262 (N.D. Cal. Oct. 28, 2011) ..........................................9

**Statutes**

28 U.S.C. § 1782 ......................................................................................... *passim*

28 U.S.C. § 1782(a) ..................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 30(b)(6) ................................................................................................5

**Other Authorities**

Department of Justice, ANTITRUST DIVISION MANUAL 61 (2015) ...................................18

Hans Smit, *Am. Assistance to Litig. in Foreign and Int'l Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 SYRACUSE J. INT'L L. & COM. 1 (1998)...................5, 11

Korea Fair Trade Comm'n, Rules on the FTC's Committee Operation and Case Handling Procedure, etc. (Sept. 7, 2011) (Exhibit A to the Declaration of Benjamin J. Hendricks) ................................................................................3, 4, 16, 17

Korea Fair Trade Commission, Who We Are, http://eng.ftc.go.kr/about/overview.jsp?page Id=0102 (last visited Jan. 17, 2016) ..........................................................................................................................3

Senate Report No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782...................11

Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Telecommunications America, LLC ("STA") (collectively, "Samsung" or the "Samsung Entities") respectfully submit this memorandum of law in opposition to Qualcomm Inc.'s ("Qualcomm") Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings.

## I.    INTRODUCTION

Qualcomm's application should be denied for a host of reasons, not the least because it seeks to circumvent the policies and procedures of the Korean Fair Trade Commission (the "KFTC"). The KFTC is an independent ministerial agency empowered to examine potentially anticompetitive practices under Korea's competition law—for the benefit of Korean consumers. As part of its investigatory and adjudicatory functions, the KFTC is authorized to make decisions about which documents and information to request from third parties and which documents and information should (or should not) be released to examinees (*i.e.*, the targets of investigations) based on confidentiality and similar concerns. Apparently dissatisfied with the KFTC's decisions on these issues, Qualcomm asks this Court to "assist" the KFTC by ordering Samsung, and other third parties to turn over: (1) documents and information already in the possession of the KFTC; and (2) documents and information that the KFTC has never requested. Qualcomm's application should be denied.

As a threshold matter, Qualcomm has not satisfied the statutory prerequisites for obtaining discovery from Samsung. Section 1782 provides that a court may order discovery for use in a foreign proceeding only if the person or entity from which discovery is sought "resides" or is "found" in the district. Courts interpret this language as requiring a corporation to be incorporated or headquartered in the district or engaged in "systematic and continuous" business activities there. Qualcomm has failed to show that any of the Samsung Entities satisfy those requirements with regard to the Northern District of California. SEC is a Korean corporation headquartered in Suwon, Korea; SEA is a New York corporation headquartered in New Jersey, and STA no longer exists, having been merged into SEA on January 1, 2015 (prior to that STA was a Delaware corporation headquartered in Texas). While Qualcomm observes that (1) SEC

1    has litigated against Apple, Inc. in this district and has a subsidiary here, and (2) STA and SEA

2    are or were in the past licensed to do business in California, courts have repeatedly held that such

3    contacts do not constitute "systematic and continuous" business activities.

4         Qualcomm also has not satisfied § 1782's statutory prerequisites because nearly all of the

5    documents and information that it seeks—with the lone exception of documents "filed or served"

6    in U.S.-based litigations or investigations—are held by SEC in Korea.  Section 1782 only

7    authorizes Courts to grant discovery of materials that are located *within the United States*.  That

8    limitation is consistent with the legislative intent of § 1782, which was to assist foreign tribunals

9    and foreign litigants in obtaining documents located in the United States that they could not

10   otherwise have obtained without the aid of § 1782.  Here, Qualcomm is trying to obtain materials

11   held by SEC ***in Korea***, and appears to have included SEA and STA—neither of which have any

12   connection to the KFTC investigation—in its application merely to create the perception that the

13   requested discovery is located in the United States.  It is not.

14        Even if the statutory prerequisites were met, the Court should exercise its discretion to

15   deny Qualcomm's application under the four-factor analysis set forth in *Intel Corp. v. Advanced*

16   *Micro Devices, Inc.* 542 U.S. 241, 264-65 (2004).  First, SEC is clearly within the jurisdictional

17   reach of the KFTC, as demonstrated by the fact that the KFTC has already requested—and

18   obtained—documents from SEC.  Second, Qualcomm presents no evidence that the KFTC is

19   amenable to the requested discovery, which the KFTC has not sought.  Rather, because

20   Qualcomm's application negatively impacts the KFTC's pending investigation of Qualcomm and

21   the enforcement of Korean law, Samsung understands that the KFTC has submitted a letter to the

22   Court opposing that application.  Third, Qualcomm is attempting to circumvent the KFTC's

23   proof-gathering procedures—which is sufficient on its own to deny the application.  The KFTC

24   has specific and well-established confidentiality rules, including procedures for requesting copies

25   of confidential materials.  Qualcomm should not be permitted to use § 1782 to sidestep those

26   procedures and invade the confidentiality of the KFTC's investigative process under the guise of

27   "assisting" the KFTC.  Permitting Qualcomm to do so would discourage Samsung and other third

28   parties from cooperating with the KFTC in future investigations because such cooperation could

1  lead to the disclosure of competitively sensitive information to competitors, and subject

2  cooperating third parties to burdensome discovery in the United States.  Fourth, Qualcomm's

3  discovery requests are unduly intrusive and burdensome.  The requests seek business documents

4  and customer communications covering an ***eleven-year*** period, as well as litigation and

5  investigatory documents from multiple complex patent matters and an International Trade

6  Commission ("ITC") investigation, all of which are governed by protective orders.  If ordered to

7  produce documents—at a tremendous expense—Samsung would need to identify relevant

8  custodians going back more than a decade, restore old information, and review a huge volume of

9  potentially relevant communications.  The protective orders governing the patent cases and ITC

10 investigation would also require Samsung to review each document "filed or served" in the matter

11 for confidential third-party information, provide any affected third party with notice of the

12 potential disclosure, and allow that third-party an opportunity to seek a protective order to prevent

13 disclosure.  That is an enormous, expensive, burdensome, and unnecessary task.

14 **II.    BACKGROUND**

15      The KFTC is a ministerial-level, central administrative organization that formulates and

16 administers Korea's competition policies and investigates and decides antitrust cases.  It performs

17 these duties "independently without any intervention from an outside organization."[1]  The

18 "examination" begins at the bureau or regional office level.  The KFTC reviews relevant

19 documents requested from the examinee and third parties, takes statements from the examinee

20 and third parties, consults experts, and conducts a variety of legal reviews.  *See* Korea Fair Trade

21 Comm'n, Rules on the FTC's Committee Operation and Case Handling Procedure, etc. (Sept. 7,

22 2011), attached hereto as Exhibit A to the Declaration of Benjamin J. Hendricks ("Hendricks

23 Decl. Ex. A").  If the examiner decides that Korean law has been violated, the examiner issues an

24 "Examiner's Report," providing a copy to both the examinee and the KFTC Committee.  *Id.*  The

25 defendant may respond to the Examiner's Report in writing, as well as in a hearing before the

26

27      [1] Korea Fair Trade Commission, Who We Are, http://eng.ftc.go.kr/about/overview.jsp?page
    Id=0102 (last visited Jan. 17, 2016).

28

SAMSUNG'S OPP. TO EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

1    Commissioners. *Id.* If the Commissioners determine that a violation occurred, they will issue a

2    written decision describing the grounds for their determination and the penalty imposed. *Id.* The

3    examinee may file a request for rehearing with the KFTC or an appeal to the Seoul High Court.

4    *Id.*

5         On November 13, 2015, the KFTC released an Examiner's Report recommending a

6    substantial monetary fine against—and modification of business practices of—Qualcomm for

7    violations of Korean antitrust law, after an extensive investigation into Qualcomm's licensing

8    practices for standard essential patents ("SEPs"). (Qualcomm Appl. at 3.) The KFTC has

9    provided a copy of the Examiner's Report to Qualcomm, and the investigatory process continues

10   with additional hearings to be held after Qualcomm submits its written response. (*Id.* at 3.)

11        To attack the KFTC action, Qualcomm has filed *ex parte* applications under § 1782

12   seeking a wide range of discovery materials from Samsung and six other multinational

13   companies. (*Id.* at 4.) Specifically, Qualcomm submits a proposed subpoena containing four

14   document requests, each of which is aimed at ***all three*** Samsung Entities:

15        • Request No. 1 seeks "all documents [Samsung has] provided to the KFTC in

16             connection with any investigation or proceeding" concerning Qualcomm, and

17             other companies, as well as "all documents quoted, cited, or referenced therein."

18             (Qualcomm Appl. Ex. A, at 5.)

19        • Request No. 2 seeks "[a]ll documents filed or served . . . in or with respect to"

20             Samsung's extensive litigation against Apple, Inc. in the Northern District of

21             California, the Seoul Central District Court, and the U.S. International Trade

22             Commission, with respect to Cellular IPR. (*Id.*)

23        • Request No. 3 seeks "[d]ocuments received" over the last 11 years "sufficient to

24             show any concerns on the part of such customers or potential customers" of

25             Modem Chipsets regarding Samsung's "lack of an exhaustive license from

26             Qualcomm to Cellular IPR." (*Id.*)

27        • Request No. 4 seeks "[d]ocuments . . . sufficient to show any decision by

28             [Samsung] to limit [Samsung's] sales or . . . development of Modem Chipsets or

1  any component of a Modem Chipset due to [Samsung's] lack of an exhaustive

2  license from Qualcomm to Cellular IPR" over an 11-year span. (*Id.* at 6.)

3  Qualcomm also seeks to compel all three Samsung Entities to present a Rule 30(b)(6)

4  witness on four deposition topics, which largely track the above documents requests. (*Id.*, Ex. B,

5  at 3.)

6  ## III.   ARGUMENT

7  "[A] court's analysis with respect to petitions pursuant to [§] 1782 proceeds in two parts.

8  A court first considers whether it has the authority to grant the petition. Once it has decided this

9  question in the affirmative, it proceeds to the second inquiry—whether to exercise its discretion in

10  granting the petition." *In re Thai-Lao Lignite (Thai..) Co.*, 821 F. Supp. 2d 289, 293 (D.D.C.

11  2011); *see also Intel Corp.,* 542 U.S. at 264 ("[A] district court is not required to grant a §

12  1782(a) discovery application simply because it has the authority to do so.") Here, Qualcomm's

13  application fails to meet the statutory prerequisites, and even if Qualcomm could meet them, the

14  Court should exercise its discretion to deny the application.

15  **A.   The Court lacks statutory authority to grant Qualcomm's application.**

16  **1.   The Samsung Entities do not reside and are not "found" in this district.**

17  Section 1782(a) authorizes a district court to order a person to produce documents or

18  testimony for use in a foreign proceeding only when that person "***resides or is found***" in the

19  district. 28 U.S.C. § 1782(a) (emphasis added); (*see also* Qualcomm Appl. at 5 (describing

20  statutory requirements)). The purpose of this statutory requirement is "to create adjudicatory

21  authority based on presence." Hans Smit, *Am. Assistance to Litig. in Foreign and Int'l Tribunals:*

22  *Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998).

23  "[M]ere transient presence is not sufficient." *Id.* at 14 n.44. Rather, courts applying § 1782(a)

24  deem corporations to reside or be "found" only in those districts where they are incorporated,

25  headquartered, or engaged in "systematic and continuous" business activities. *See, e.g.*, *In re*

26  *Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) ("'[I]nsofar as the word 'found' is applied to

27  corporations, it may safely be regarded as referring to judicial precedents that equate systematic

28  and continuous local activities with presence.'") (quoting Professor Smit, drafter of § 1782); *In re*

1  *Inversiones y Gasolinera Petroleos Valenzuela*, 2011 U.S. Dist. LEXIS 5201, at *21-22 (S.D.

2  Fla. Jan. 19, 2011) ("[I]f a corporation's place of incorporation or headquarters is outside of the

3  district, the applicant must establish that the corporation undertakes 'systematic and continuous

4  local activities' in order for the corporation to be found there for the purposes of [§] 1782.").[2]

5         The "systematic and continuous" contacts test applied under § 1782(a) was derived from

6  the test for general jurisdiction because courts in both contexts seek to determine whether a

7  corporation's contacts are substantial enough to approximate a physical presence in the forum.

8  *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984); *King v. Am.*

9  *Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) ("For general jurisdiction to obtain, the

10 defendant's contacts must approximate physical presence in the forum."); *Bancroft & Masters,*

11 *Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding that only contacts that

12 "approximate [a] physical presence" suffice for general jurisdiction).[3]  The Supreme Court

13

14  [2] *See also In re Thai-Lao Lignite (Thai.) Co.*, 821 F. Supp. at 294 (denying petition for discovery under § 1782(a) and refusing "to infer that a Delaware company headquartered in Maryland has the requisite contacts to be found in or to reside in this district"); *cf. In re*

15  *Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 U.S. Dist. LEXIS 94161, at *14 (S.D.N.Y. Dec. 29, 2006) ("McKinsey maintains its headquarters in New York, and thus is 'found' within this

16  district.").

17  [3] Indeed, "[c]ourts considering whether to grant a petition for assistance pursuant to 28 U.S.C. § 1782 have analyzed their authority by referencing the language in section 1782—whether it is a

18  district 'in which a person resides or is found'—rather than discussing whether the Court has subject matter and personal jurisdiction over the entity or person from whom discovery is

19  sought." *In re Thai-Lao Lignite (Thai.) Co.*, 821 F. Supp. at 294. "To some extent, courts have considered these inquiries to be the same. . . . At minimum, they overlap considerably." *Id.*

20  However, to the extent the analysis on personal jurisdiction is distinct, Samsung also objects to Qualcomm's application on that basis. "The burden of proof is on the plaintiff to show that

21  jurisdiction is appropriate." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). While Qualcomm's application asserts that this Court has subject matter jurisdiction, it does not even

22  attempt to show that this Court has personal jurisdiction. (*See* Qualcomm Appl. at 1.) This Court does not have general personal jurisdiction over any of the Samsung Entities for the same reasons

23  Samsung is not "found" in this district, as explained in Part III.A.1. Moreover, to show specific personal jurisdiction, Qualcomm must show that its claim "arises out of or relates to the

24  defendant's forum-related activities." *Washington Shoe Co. v. A-Z Sporting Goods Inc.,* 704 F.3d 668, 672 (9th Cir. 2012). This requires showing that the claim would not have arisen "but for"

25  the defendant's activities in the forum state. *See Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995). But Qualcomm's request admittedly arises from a "proceeding before the antitrust

26  regulator in the Republic of Korea," (Qualcomm Appl. at 2), and *not* from any activities of any Samsung Entities in this district. Samsung expressly reserves the right to challenge personal

27  jurisdiction on a motion to quash, in the event the Court finds it appropriate to issue any subpoenas.

28

1    recently clarified that general jurisdiction requires more than just "continuous and systematic"

2    contacts; it requires contacts that "are so 'continuous and systematic' as to render [a corporation]

3    essentially *at home* in the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (citation

4    omitted) (emphasis added). The Court observed that except in "exceptional case[s]," a

5    corporation is "at home" only where it is incorporated or maintains its principal place of business.

6    *Id.* at 761 n.19. Accordingly, *Daimler's* "at home" test should govern whether a corporation is

7    "found" in a district for purposes of § 1782(a).

8         It makes little difference whether the Court applies the *Daimler* "at home" test or the

9    "continuous and systematic" contacts test, because Qualcomm has not satisfied its burden under

10   either test. *See In re Kolomoisky*, 2006 U.S. Dist. LEXIS 58591, at *9-10 (S.D.N.Y. Aug. 18,

11   2006) (petitioner bears burden of establishing § 1782(a)'s statutory requirements). Qualcomm

12   does not contend that any of the Samsung Entities are incorporated or headquartered in this

13   district—nor could it given that those entities are based in Korea and New Jersey.[4] Instead,

14   Qualcomm argues that the Samsung Entities are "found" in this district because: (1) SEC has

15   "availed itself of the jurisdiction of this Court" in litigation against Apple, Inc.; (2) SEA is

16   registered, and STA was registered, to conduct business in the State of California; and (3) SEC's

17   wholly-owned subsidiary, Samsung Research America, Inc., is headquartered in this district. (*See*

18   Qualcomm Appl. at 6-7.) Even if true, none of those assertions is sufficient to establish that the

19   Samsung Entities are "at home" or engaged in "continuous and systematic" business activity in

20   this district.

21        First, initiating or defending litigation within a district does not establish a "systematic

22   and continuous" presence in that district. *See, e.g.*, *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed.

23   App'x. 86, 96 (10th Cir. 2012) ("[D]omestic litigation detours into Colorado do not amount to

24   'continuous and systematic general business contacts.'") (citation omitted); *Soma Med. Int'l v.*

25

26        [4] SEC is a Korean corporation headquartered in Suwon, Korea; SEA is a New York
     corporation headquartered in New Jersey; and STA was a Delaware corporation headquartered in
27   Texas, but has since been merged with SEA and is now part of a New York corporation
     headquartered in New Jersey. Declaration of Kyu-Sung Lee (Jan. 21, 2016) ("Decl.") ¶¶ 2-4.

28

SAMSUNG'S OPP. TO EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

*Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) ("fil[ing] five civil cases" in forum state is not "substantial and continuous local activity") (quotation omitted); *AstraZeneca Pharms. LP v. Mylan Pharms. Inc. (In re Rosuvastatin Calcium Patent Litig.)*, 2009 U.S. Dist. LEXIS 117355, at \*24-25 (D. Del. Dec. 11, 2009) (participation in thirteen lawsuits in the district did not constitute "continuous and systematic" contacts); *Merlino v. Harrahs Entm't, Inc.*, 2006 WL 401847, at \*3 (E.D. Penn. Feb. 17, 2006) ("Filing even nineteen lawsuits, without more, cannot constitute continuous and systematic activity . . . .").[5] Thus, the mere fact that SEC has "availed itself of the jurisdiction of this Court" during "protracted" litigation with Apple, Inc. (Qualcomm Appl. at 6)—which is unsurprising, of course, given that Apple, Inc. is headquartered here—is insufficient to establish "systematic and continuous" business activity.  Nor is it sufficient that, in certain requests, Qualcomm seeks to obtain documents that SEC produced or served in this district, as that is irrelevant to whether SEC is "found" here for purposes of § 1782(a).  *See In re Roebers*, 2012 U.S. Dist. LEXIS 92464, at \*7-8 (N.D. Cal. July 3, 2012) (assertions that records are "located and stored in the Northern District of California" insufficient to establish that corporations were "found" here for purposes of § 1782).  Qualcomm does not allege that SEC has any employees or places of business in this district, nor that it conducts any business here whatsoever.  Thus, there is no basis to conclude that SEC is "found" here for purposes of § 1782(a).

---

[5] *See also United States ex rel. Banignan v. Organon USA Inc.*, 2012 U.S. Dist. LEXIS 49661, at \*19 (D. Mass. Apr. 9, 2012) ("Filing two lawsuits in the U.S. is not 'continuous and systematic' activity."); *Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, 2012 U.S. Dist. LEXIS 21938, at \*11 (S.D. Tex. Feb. 22, 2012)(participating "in recent, unrelated litigation" in the district is not continuous and systematic business activity); *Jones v. Blige*, 2006 U.S. Dist. LEXIS 29721, at \*13-14 (E.D. Mich. May 16, 2006) (defendant's "status as a plaintiff in three law suits" within Michigan did not constitute "continuous and systematic" contacts with the state); *Blackwell v. Marina Assocs.*, 2006 U.S. Dist. LEXIS 9423, at \*14-15 (E.D. Pa. Mar. 9, 2006) ("fact that defendant has brought suit in Pennsylvania as a plaintiff is immaterial to the question of whether it" maintains "continuous and systematic" contacts with Pennsylvania); *Travelers Cas. & Sur. Co. v. Interclaim (Berm.) Ltd.*, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004) ("Travelers . . . has not carried its burden by providing any authority whatsoever for the dubious proposition that general jurisdiction may be asserted on the basis of involvement in an unrelated lawsuit. The court is unpersuaded that the prosecution of the Northern District of Illinois litigation . . . constitutes 'doing business' in Illinois.").

1        Second, registering to do business in a state is insufficient to establish a "systematic and

2    continuous" presence in that state, much less a "systematic and continuous" presence in a ***specific***

3    ***district*** within that state.  *See King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011)

4    (no "continuous and systematic" presence where a corporation registered to do business in state

5    and appointed agent for service of process); *Senne v. Kan. City Royals Baseball Corp.*, 105 F.

6    Supp. 3d 981 (N.D. Cal. May 20, 2015) (same); *Overhill Farms, Inc. v. W. Liberty Foods LLC*,

7    2014 U.S. Dist. LEXIS 116969, at *9 (C.D. Cal. Aug. 21, 2014) (same); *Presidio Home Care,*

8    *LLC v. B-East, LLC*, 2014 U.S. Dist. LEXIS 82686, at *10 (C.D. Cal. June 13, 2014) (same);

9    *World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of N.Y., Inc.*, 2011 U.S.

10   Dist. LEXIS 125262, at *10 (N.D. Cal. Oct. 28, 2011) (same).  Thus, the mere fact that SEA and

11   STA, at some point, registered to do business in California is insufficient to establish that either

12   entity is "found" in this district.  SEC has not registered to do business in California.

13       Third, the presence of a wholly owned subsidiary within a district is insufficient to

14   establish that the parent corporation is "found" within that district for purposes of § 1782(a).  *See*

15   *Godfrey*, 526 F. Supp. 2d at 421 n.1 (holding that Russian corporation was not "found" in New

16   York despite having a subsidiary in the district);[6] *In re Appl. of Nokia Corp.*, 2007 U.S. Dist.

17   LEXIS 42883, at *8-13 (W.D. Mich. June 13, 2007) (holding that German corporation was not

18   "found" in Michigan despite owning a controlling interest in subsidiary headquartered there); *see*

19   *also In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv.*

20   *Group LLC*, 2014 U.S. Dist. LEXIS 95578, at *14 (S.D.N.Y. July 8, 2014) (holding that

21   international auditors were distinct from their parent companies and therefore not "found" in New

22   York for purposes of § 1782(a)).  That SEC allegedly has a subsidiary that does business in this

23   district is therefore insufficient to establish that SEC is "found" here for purposes of § 1782(a).

24

25

26       [6] *Godfrey* is the only authority Qualcomm cites for the proposition that ownership of a
     subsidiary in a district is sufficient for a parent corporation to be "found" there for purposes of §
27   1782(a).  (Qualcomm Appl. at 6.)  But *Godfrey* holds exactly the opposite.  *See* 526 F. Supp. 2d at
     421-22.

28

1    Likewise, SEC would not be "found" in this district even if the Court were to conclude that SEA

2    or STA is "found" here.

3           Accordingly, because the statutory requirements of § 1782(a) are not satisfied with regard

4    to any of the Samsung Entities, Qualcomm's application must be denied.  *See, e.g., In re Thai-*

5    *Lao Lignite (Thai.) Co.*, 821 F. Supp. 2d at 298 (dismissing petition for discovery under § 1782

6    where defendant was not "found" in the district).

7           **2.    Section 1782 does not authorize the discovery of documents held outside
                    the United States.**

8

9           The Court must also deny Qualcomm's application because much of the requested

10   materials are held outside the United States,[7] and the Court therefore lacks authority under § 1782

11   to compel their production.  *See In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (noting

12   persuasiveness of district court's view that Congress intended § 1782 to reach only evidence

13   located in the United States); *In re Grupo Unidos Por El Canal, S.A.*, 2015 U.S. Dist. LEXIS

14   50910, at *28 (D. Colo. Apr. 17, 2015) ("[I]t would be outside the jurisdictional reach of the

15   statute to compel [respondent] to produce the documents that are physically in Panama."); *In re*

16   *Kreke Immobilien KG*, 2013 U.S. Dist. LEXIS 160283, at *11 (S.D.N.Y. Nov. 8, 2013) ("This

17   Court finds Judge Rakoff's analysis in *Godfrey* compelling and agrees that the bulk of authority

18   in this Circuit suggests that § 1782 respondent cannot be compelled to produce documents located

19   abroad.") (quotations and citation omitted); *Norex Petroleum Ltd. v. Chubb Ins. Co. of Can.*, 384

20   F. Supp. 2d 45, 57 (D.D.C. 2005) ("The facts of this case militate against ordering that the

21   requested documents, which are held abroad by a foreign parent company."); *Godfrey*, 526 F.

22   Supp. 2d at 423 (quashing § 1782 subpoenas in part, because the documents at issue were held in

23   Germany); *see also In re Thai–Lao,* 821 F.Supp 2d at 298 ("[T]he court need not conclusively

24   address whether such a bar exists, but does find that the location of the information militates

25   against granting the petition.").

26          _____
            [7] Of Plaintiffs' four document requests, only documents responsive to the portion of Request
27   No. 2 seeking U.S. litigation and ITC investigation materials—which are irrelevant for the
     reasons discussed below—are held in the U.S.  All other responsive documents are located in
28   Korea.  Decl. ¶¶ 6-9.

Limiting § 1782's scope to documents located in the United States is consistent with the statute's legislative history.  The 1964 Senate Report, issued when § 1782 was undergoing major revisions, states that the purpose of § 1782 is "obtaining evidence *in the United States* in connection with proceedings before foreign and international tribunals."  Senate Report No. 88-1580, (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3782 (emphasis added).  The Senate Report further notes that the amendments enacted at that time were intended to "clarif[y] and liberalize[] U.S. procedures for assisting foreign and international tribunal and litigants in obtaining oral and documentary evidence *in the United States*."  *Id.* at 3788 (emphasis added).  The chief drafter of the 1964 amendments, Professor Hans Smit, has also stated that § 1782 was never intended to reach documents or testimony outside the United States.  *See* Hans Smit, *Am. Assistance to Litig. in Foreign and Int'l Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 SYRACUSE J. INT'L L. & COM. 1, 11 (1998).  Rather, said Professor Smit, the drafters sought to create "a harmonious scheme" where "[e]vidence in Spain is obtained through proceedings in Spain, evidence in Great Britain is obtained through proceedings in Great Britain, and evidence in the United States is obtained through proceedings in the United States."  *Id.*  To hold otherwise, would allow parties to circumvent the discovery procedures of foreign countries, and establish American courts as "clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world."  *Id.*  Indeed, that is precisely what Qualcomm is attempting to do here.

Much of the information that Qualcomm seeks is held by SEC *in Korea* (Decl. ¶¶ 6-9), and should be obtained under Korean law.  The only exception is documents filed or served by SEC's counsel in U.S.-based litigations or investigations.  It thus appears that Qualcomm has included SEA and STA in the application merely to create the appearance that its discovery requests have some connection to the United States, when in fact they do not.

While a small minority of courts have allowed discovery under § 1782 to reach outside the United States, those outliers do not upset the clear weight of the authority to the contrary.  Almost all of the cases allowing discovery of materials held outside the United States rely on *In re Gemeinshcaftspraxis*, 2006 WL 3844464, *5 (S.D.N.Y. Dec. 29, 2006), where the court refused

1    to impose any limits on the reach of § 1782 based on its reading of the statutory language.  But

2    only a year later, Judge Rakoff rejected that reasoning as inconsistent with Supreme Court

3    precedent and legislative intent.  *See Godfrey*, 526 F. Supp. 2d at 423 ("Respectfully, I disagree

4    [with *In re Gemeinshcaftspraxis*].")  While Judge Rakoff acknowledged that the statutory

5    language of § 1782 does not contain an explicit limitation on its reach, he found that the Supreme

6    Court in *Intel* "implicitly assumed the evidence under § 1782 would be located in the United

7    States" and confirmed that the purpose of § 1782 was to aid discovery of evidence in the United

8    States that was otherwise outside the foreign tribunal's reach.  *Id.* at 423-24 ("[N]onparticipants

9    in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their

10   evidence*, available in the United States*, may be unobtainable absent § 1782 aid.") (quoting *Intel*

11   *Corp.*, 542 U.S. at 264) (emphasis added).  Later courts have adopted Judge Rakoff's reasoning

12   over that of *In re Gemeinshcaftspraxis*.  *See In re Kreke Immobilien KG*, 2013 WL 5966916, at

13   *4 (S.D.N.Y. Nov. 8, 2013) ("This Court finds Judge Rakoff's analysis in *Godfrey* compelling

14   and agrees that '[t]he bulk of authority in this Circuit' suggests that a § 1782 respondent cannot

15   be compelled to produce documents located abroad.") (citation omitted).  Thus, this Court should

16   deny Qualcomm's application on the ground that it is directed at documents located outside the

17   United States.

18       **B.    The *Intel* factors weigh strongly against granting Qualcomm's application.**

19           To the extent the Court finds that it has the authority to entertain Qualcomm's application,

20   the Court should exercise its discretion to deny it.  Courts evaluate four factors when determining

21   whether to permit discovery under § 1782:  (1) whether "the person from whom discovery is

22   sought is a participant in the foreign proceeding"; (2) the "nature of the foreign tribunal, the

23   character of the proceedings underway abroad, and the receptivity of the foreign government or

24   the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery

25   request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a

26   foreign country"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel Corp.*,

27   542 U.S. at 264-65.  All four factors weigh against granting Qualcomm's application.

28

1

2

### 1. Samsung has participated in the KFTC's investigation by responding to formal and informal requests for information.

3

4

In adopting the first *Intel* factor, the Supreme Court explained that when "the person from

5

whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid

6

generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in

7

the matter arising abroad." *Id.* at 264. That is because "[a] foreign tribunal has jurisdiction over

8

those appearing before it, and can itself order them to produce evidence," while "nonparticipants

9

in the foreign proceeding *may be outside the foreign tribunal's jurisdictional reach*; hence, their

10

evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

11

(emphasis added). Because the application seeks documents held by SEC—a voluntary

12

participant in the KFTC investigation that is under the KFTC's jurisdiction—the first *Intel* factor

13

weighs strongly against the requested discovery.

14

Although Samsung is not a direct party to the KFTC's investigation, Samsung has

15

"participated" in that investigation by providing documents and information to the KFTC in

16

response to formal "Requests for Information" and informal discovery requests. (Decl. ¶ 10.)

17

There is thus no need for this Court to "assist" the KFTC by ordering Samsung to produce

18

additional discovery materials that the KFTC itself has not requested. *See In re Microsoft Corp.*,

19

428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is

20

available to the foreign tribunal."). Samsung's voluntary cooperation with the KFTC renders

21

Qualcomm's application unnecessary and weighs against granting it. *See In re Macquarie Bank*,

22

2015 LEXIS 72544, at *16 (D. Nev. May 28, 2015) (denying § 1782 application where

23

respondent "is cooperating with the bailiff's request for information in those proceedings.").

24

Moreover, even if Samsung had not agreed to participate in the KFTC investigation,

25

nearly all of "the documents or testimony sought by the application are within the foreign

26

tribunal's jurisdictional reach"—which also weighs against granting the application. *In re Kreke*

27

*Immbolien*, 2013 WL 5966916, at *5 (quotations and citation omitted); *see also In re Macquarie*

28

*Bank*, 2015 LEXIS 72544, at *16 (denying § 1782 application in part because "documents are

within the jurisdictional reach of the [foreign court]"). Request No. 1 seeks documents that

Samsung provided to the KFTC (Decl. ¶ 6), so there is no question those documents are within the KFTC's reach.  Request No. 2 seeks documents served or filed in litigation or ITC investigations by the Samsung Entities.  These cases and investigations all involved SEC as a party—a company headquartered in Suwon, Korea—so those documents are likewise within the KFTC's reach.  And Requests Nos. 3 and 4 seek documents concerning Modem Chipsets, which are manufactured and sold only by Samsung entities based in Korea, meaning those documents are also within the KFTC's reach.  (Decl. ¶¶ 5, 8-9.)  Thus, if the KFTC believed that any of the discovery requested by Qualcomm would "assist" its investigation, the KFTC could obtain the information from SEC.  There is simply no reason for this Court to get involved or second guess the KFTC's decisions concerning which documents it needs to evaluate Qualcomm's conduct under Korean law, which is designed to protect Korean consumers.

### 2.    Qualcomm's requested discovery would not assist the KFTC.

In applying the second *Intel* factor, courts focus on the relevance of the evidence sought and whether the foreign tribunal is likely to receive it.  *Intel*, 542 U.S. at 264.  This factor weighs against granting Qualcomm's application because Qualcomm has not established that any of the requested discovery is relevant to the KFTC's investigation, nor that the KFTC is amenable to receiving it.  (*See* Qualcomm Appl. at 8-10.)

While Qualcomm contends that documents and testimony concerning "negotiations between Qualcomm and Samsung" are "critical to the KFTC's ability to evaluate the accuracy of the allegations" (Qualcomm Appl. at 9), Qualcomm's proposed discovery requests do not seek documents or information concerning those negotiations.  (Qualcomm Appl. Ex. A, at 5-6.)  And while Qualcomm contends that the positions Samsung has taken before the KFTC are "directly contradicted by positions it has taken in litigation before this Court involving patent disputes between Samsung and Apple" (Qualcomm Appl. at 9), Qualcomm offers no explanation as to how Samsung's positions in private patent litigation under ***U.S. law*** have any bearing on whether Qualcomm's licensing practices violated ***Korean antitrust law***.  Indeed, under U.S. antitrust law, the same conduct may be lawful for a company without monopoly power (*i.e.*, Samsung) and simultaneously unlawful for a company with monopoly power (*i.e.*, Qualcomm); as Justice Scalia

- 14 -

1   once wrote, the conduct of a monopolist is viewed through a "special lens." *Eastman Kodak Co.*

2   *v. Image Tech. Servs., Inc.*, 504 U.S. 451, 488 (1992) (Scalia, J. dissenting) ("Where a defendant

3   maintains substantial market power, his activities are examined through a special lens: Behavior

4   that might otherwise not be of concern to the antitrust laws—or that might even be viewed as

5   procompetitive—can take on exclusionary connotations when practiced by a monopolist.").  Nor

6   does Qualcomm explain how challenging Samsung's "credibility" will help it defend its licensing

7   practices, which applied to other market participants as well, as demonstrated by the fact that

8   Qualcomm seeks discovery from six other entities that have presumably licensed Qualcomm

9   patents.  (Qualcomm Appl. at 9.)

10          This factor also weighs against granting the application because Qualcomm has made no

11   showing that the KFTC needs, wants, or would consider the requested discovery.  *See In re*

12   *Cathode Ray Tube (CRT) Antitrust Litig.*, 2012 U.S. Dist. LEXIS 184777, at *61 (N.D. Cal. Oct.

13   22, 2012) ("In the Ninth Circuit, courts have generally placed the burden on the requesting party .

14   . . to provide facts showing that the foreign court would welcome the proposed discovery."); *In re*

15   *O2CNI Co.*, 2013 U.S. Dist. LEXIS 116019, at *22 (N.D. Cal. Aug. 15, 2013) (finding second

16   *Intel* factor neutral where there was "no persuasive evidence that either the Korean authorities or

17   the Japanese court want additional discovery"); *In re Samsung Elecs. Co.*, 2013 U.S. Dist. LEXIS

18   10518, at *8 (N.D. Cal. Jan. 23, 2013) (Grewal, J.) (finding second *Intel* factor neutral where

19   applicant provided little "in the way of evidence that the Japanese court would be receptive to the

20   evidence requested for this case"); *In re Appl. of Motorola Mobility, LLC*, 2012 U.S. Dist. LEXIS

21   149679, at *6 (N.D. Cal. Oct. 17, 2012) (finding second Intel factor neutral where movant "has

22   not provided specific evidence regarding the receptivity of the German courts to discovery" and

23   therefore "the court has insufficient information to determine whether the German courts will

24   accept the discovered evidence").  In fact, because Qualcomm's application negatively impacts

25   the KFTC's pending investigation of Qualcomm and the enforcement of Korean law, Samsung

26   understands that the KFTC has submitted a letter to this Court opposing that application.  Thus,

27   the second *Intel* factor weighs heavily against granting Qualcomm's application.

28

**3.    Qualcomm's application seeks to circumvent the Korean legal process.**

The third *Intel* factor focuses on whether the application is an attempt to end-run "foreign proof-gathering restrictions," *Intel*, 542 U.S. at 265 , or "side-step" less-than-favorable discovery rules, *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 8255, at *64.  This factor weighs heavily—if not dispositively—against Qualcomm's application, which is clearly intended to avoid Korean discovery rules.

Qualcomm asks this Court to compel the disclosure of materials that ***the KFTC has deemed confidential and refused to disclose at this time.***  *See* Hendricks Decl. Ex. A, Article 29-2.  The KFTC has specific rules regulating the disclosure of third-party information produced in aid of a Korean antitrust investigation.  As noted above, after a preliminary investigation is complete, the KFTC releases a detailed Examiner's Report—as they did to Qualcomm—which provides an explanation of each allegation and recommendation.  (*See* Qualcomm Appl. at 3).  KFTC regulations require it to disclose to the examinee all exhibits and data supporting the Examiner's Report to the examinee, except where "special reasons" are present, including where disclosure implicates third-party confidentiality rights.  Hendricks Decl. Ex. A, Article 29.  In the event the KFTC withholds documents obtained from third parties based on confidentiality, the examinee has the right to request permission from the  KFTC Committee to read or copy the excluded documents.  Hendricks Decl. Ex. A, Article 29-2.  Rather than follow these procedures, Qualcomm seeks to circumvent them and obtain under U.S. law the very documents that the KFTC has withheld under Korean law.  (*See* Qualcomm Appl. at 4 (claiming that it has not yet received attachments to Examiner's Report).)

The situation presented here is thus analogous to *In re Microsoft Corp.*, 2006 U.S. Dist. LEXIS 24870 (N.D. Cal. Mar. 29, 2006), where Microsoft attempted to obtain documents from multiple U.S. companies regarding their communications with the European Commission, which is the European equivalent to the KFTC.  *Id.* at *4-5.  In granting a motion to quash Microsoft's subpoenas, the Court observed:

> The character of the proceedings underway before the European Commission is particularly important in the instant case. The proceedings involve enforcement of the 2004 Decision the European Commission

previously issued against Microsoft.  The 2004 Decision called for the establishment of a trustee to monitor whether Microsoft complied, or failed to comply, with the requirements of the 2004 Decision.  The Trustee Decision expressly provides that "Confidential Information" obtained by the Trustee in the course of his duties may not be disclosed to anyone other than the Commission.  ***Any such information the Trustee transmits to the Commission becomes part of the file, and subject to the Commission's procedures for determining whether or not Microsoft is entitled to access to it***.  This is not a situation involving only a foreign tribunal's general rules and procedures governing proof gathering.  ***This situation involves a tribunal's specific order restricting a specific litigant's ability to gather evidence.  Under these circumstances, the subpoenas constitute an attempt to circumvent specific restrictions the European Commission has placed on Microsoft's right to obtain certain kinds of information.  This alone weighs heavily against allowing the requested discovery.***

*Id.* at *9-10. (citation omitted) (emphasis added).  Two other district courts came to the exact same conclusion in matters evaluating related applications.  *See In re Appl. of Microsoft Corp.*, 2006 WL 1344091, at *4 (D. Mass. Apr. 17, 2006) (quashing Microsoft's application to Novell after the European Commission made a submission to the Court because "Microsoft's § 1782 subpoena to Novell would circumvent and undermine the law of the European Community concerning how a litigant may obtain third-party documents"); *In re Appl. Microsoft Corp.*, 428 F. Supp. 2d. 188, 195 (S.D.N.Y. 2006) (same).

The Trustee in *Microsoft* is directly analogous to the KFTC Examiner, who chooses what information to submit to the KFTC Committee.  *See* Hendricks Decl. Ex. A, Article 29.  As described above, that information is then subject to the KFTC's procedures for determining whether or not Qualcomm is entitled to access it.  *Id.*  Thus, by asking the court to Order Samsung to produce the same information that the KFTC has chosen to withhold as confidential, Qualcomm is attempting to circumvent specific restrictions that have been placed on it by the KFTC.  *See also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2012 U.S. Dist. LEXIS 184777, at *62 (finding it "self-evident" that § 1782 subpoena was "an attempt to circumvent the proof-gathering policies of Korea"); *In re Appl. of Digitechnic*, 2007 WL 1367697, *4 (W.D. Wash. May 8, 2007) (granting a motion to quash a § 1782 subpoena in part because the applicant "has not even tried to obtain any of the discovery sought here by way of French discovery tools.").

Permitting Qualcomm to sidestep Korean legal procedures would have negative consequences for the KFTC, including chilling the incentives of companies to give information to

1    the KFTC, all to the detriment of Korean consumers.  Korea's confidentiality rules are put into

2    place to ensure that the KFTC can obtain from third parties the information that it needs to

3    investigate potentially anticompetitive conduct.  U.S. antitrust authorities have similar

4    confidentiality rules in place during their investigatory phase.  *See* Department of Justice,

5    ANTITRUST DIVISION MANUAL 61 (2015), *available at* http://www.justice.gov/atr/file/

6    761141/download ("[The ACPA] provides for only four circumstances under which CID material

7    may be disclosed to third parties without the consent of the producing party.")  The KFTC's

8    ability to investigate anticompetitive conduct would be jeopardized if third parties knew that

9    cooperation with the KFTC could lead to burdensome discovery in the U.S.  *See FTC v. Sysco*

10    *Corp.* 83 F. Supp. 271, 275 (D.D.C. 2015) (even at the litigation stage of an antitrust

11    investigation, the Federal Trade Commission argued that the disclosure of third-party names

12    "would have a 'chilling effect' on witnesses whose cooperation the FTC may seek in future

13    investigations").

14            **4.**     **Qualcomm's discovery requests are unduly intrusive and burdensome.**

15         The final *Intel* factor considers the intrusiveness and burden of the requested discovery.

16    Burden alone may be sufficient to reject a § 1782 application.  *See In re Appl. of Okean B.V. &*

17    *Logistic Sol. Int'l*, 60 F. Supp. 3d 419, 422 (S.D.N.Y. 2014).  All four of Qualcomm's discovery

18    requests are unduly intrusive and burdensome and warrant denial of the application.

19         Through Request No. 1, Qualcomm—a Samsung competitor—seeks highly confidential

20    and competitively sensitive documents that reveal internal business decisions and processes.

21    (Decl. ¶ 11.)  There is no guarantee that the confidentiality of those documents will be maintained

22    if Qualcomm uses them in the KFTC proceedings.  *See In re Cathode Ray Tube (CRT) Antitrust*

23    *Litig.*, 2012 U.S. Dist. LEXIS 184777, at *64-65 ("[T]here is no way to anticipate all of the ways

24    in which their confidential documents, which are now protected by an order of this court, could

25    become exposed and not protected in Korea, and might become available for public use in

26    business matters.")  Additionally, granting Qualcomm's application would intrudes on the

27    KFTC's investigatory process by requiring Samsung to produce documents that were provided to

28    the KFTC with an expectation that they would be kept confidential.  As described above, the

1    KFTC has a strong interest in keeping third-party information confidential to encourage

2    cooperation with ongoing investigations, and permitting Qualcomm to bypass the KFTC's

3    procedures for requesting confidential information would undermine the KFTC's authority as a

4    sovereign regulator.

5        Request No. 2 is also unduly intrusive and burdensome.  Documents filed or served in

6    various patent litigations against Apple Inc., and in a related ITC investigation, contain sensitive

7    information about Samsung's products, patents, business practices, and customers.  (Decl. ¶ 12.)

8    That is why each of those courts issued protective orders to seal that information from public

9    view.  *See Apple Inc. v. Samsung Electronics Co. Ltd.*, Dkt. No. 512 (entered May 13, 2013) (No.

10   12-630); *Apple Inc. v. Samsung Electronics Co. Ltd.*, Dkt. No. 687 (entered Jan. 30. 2012) (No.

11   11-1846); *In the Matter of Certain Electronic Devices, Including Wireless Communication*

12   *Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-

13   794, Order No. 1 (entered Aug. 4, 2011).  Moreover, many of those documents will contain

14   sensitive information that was produced by Apple Inc. or other third parties and designated as

15   Confidential or Highly Confidential.  *Id.*  Thus, under the relevant protective orders, SEC would

16   be required to review each document to identify confidential third-party information—an

17   extraordinarily time-consuming and burdensome process that could take many months to

18   complete.  For each of those documents, Samsung would then be obligated to notify the third

19   party, and provide them an opportunity to file for a protective order to shield the confidential

20   information from disclosure to Qualcomm.  *Id.*  Thus, the production of litigation material would

21   be fraught with procedural and financial burdens for both Samsung and numerous third parties

22   with no connection to the KFTC investigation.

23       Requests Nos. 3 and 4 seek customer communications and other business documents

24   concerning Modem Chipsets over an ***eleven year period***.  Searching for and producing those

25   competitively sensitive materials would be extraordinarily burdensome.  (Decl. ¶ 13.)  Samsung

26   would need to determine who the relevant employees were a decade ago that would have been

27   communicating with an untold number of customers, and then attempt to locate relevant emails or

28   other communications (many of which would have been deleted or archived) with those

1    customers concerning Modem Chipsets.  (Decl. ¶¶ 12-13.)  Again, this process could take months

2    of effort and cost huge amounts of money.  (Decl. ¶ 13.); *see also In re Cathode Ray Tube (CRT)*

3    *Antitrust Litig.*, 2012 U.S. Dist. LEXIS 184777, at *63 ("[T]he burden of gathering together and

4    compiling the information in electronic form is still very substantial.").

5    **IV.    CONCLUSION**

6          For the foregoing reasons, Samsung respectfully requests that the Court deny Qualcomm's

7    application.

8

9                                                     *By: /s/ Ian  Simmons*
                                                      O'MELVENY & MYERS LLP
10                                                            1625 Eye St. NW
                                                      Washington, DC 20006
11                                                   Telephone: (202) 383-5300
                                                      Facsimile: (202) 383-5414
12                                                   Email: isimmons@omm.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPP. TO EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3

4

    I hereby certify that on January 24, 2016, I served a copy of The Samsung Entities'
Memorandum of Law in Opposition to Qualcomm's Ex Parte Application for an Order Pursuant
to 28 U.S.C. § 1728 Granting Leave to Obtain Discovery For Use in Foreign Proceedings via the
Court's Electronic Case Filing (ECF) system in accordance with Local Rule 5.1(h)(1) and by
email to the counsel of record listed here:

5

6

7

8

Benjamin Gruenstein
Cravath, Swaine Moore LLP
825 Eighth Avenue
New York, NY 10019
212-474-1000
Email: bgruenstein@cravath.com

9

10

11

12

13

14

David Allan Kays
Morgan Franich Fredkin Siamas & Kays LLP
333 W. San Carlos Street
Suite 1050
San Jose, CA 95110
408-288-8288
Fax: 408-288-8325
Email: dkays@mffmlaw.com

15

16

17

18

19

Freeda Yllana Lugo
Morgan Franich Fredkin Siamas & Kays LLP
333 W. San Carlos St.
Ste. 1000
San Jose, CA 95110
408-288-8288
Fax: 408-288-8325
Email: flugo@mffmlaw.com

20

21

22

23

Gary Andrew Bornstein
Cravath, Swaine and Moore
Worldwide Plaza
825 Eighth Ave.
New York, NY 10019
212-474-1000
Email: gbornstein@cravath.com

24

25

26

27

William Nicholas Siamas
Morgan Franich Fredkin & Marsh
San Jose, CA
408-288-8288
Fax: 408-288-8325
Email: wsiamas@mffmlaw.com

28

- 21 -

1

Yonatan Even

2

Cravath, Swaine and Moore LLP

825 Eighth Avenue

3

New York, NY 10019

212-474-1000

4

Fax: 212-474-3700

Email: yeven@cravath.com

5

6

7

8

By: _____

9

O'MELVENY & MYERS LLP

1625 Eye St. NW

10

Washington, DC 20006

11

Telephone: (202) 383-5300

Facsimile: (202) 383-5414

12

Email: bhendricks@omm.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPP. TO EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782